IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GOTHAM HOLDINGS, LP, <br> PRIMARIUS PARTNERS LP, <br> PRIMARIUS OFFSHORE PARTNERS LTD., <br> PRIMARIUS FOCUS LP, <br> PRIMARIUS CHINA FUND LP, <br> WILLOWCREEK CAPITAL PARTNERS, LP, <br> WILLOWCREEK CAPITAL PARTNERS II, LP, <br> and <br> WILLOWCREEK OFFSHORE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH GRADES, INC., and <br> KERRY R. HICKS, <br><br> Defendants. | Case No. 09-C-1843 <br><br><br><br> Judge James B. Zagel <br><br><br><br><br><br> [U.S. District Court, Southern District of <br> New York, Case No. 07 CV 2563 <br> (MGC)] |

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO DEFENDANT HEALTH GRADES' MOTION
FOR STAY PENDING APPEAL**

The plaintiffs respectfully submit this memorandum in response to the Court's request at the hearing on June 4, 2009. The Court should deny the motion of the defendant Health Grades, Inc. ("Health Grades") to stay the Court's May 11, 2009 order denying the motion to quash the subpoena to Hewitt Associates, LLC ("Hewitt"). Health Grades' continued obstruction of the plaintiffs' legitimate discovery of documents held by Hewitt, an important non-party witness, now threatens to disrupt, for a second time, the schedule of the underlying litigation in the Southern District of New York, including a fact discovery cutoff of December 2, 2009, to which Health Grades agreed.[1] The discovery cutoff has been delayed once before as the result of

---

[1] See the letter from Health Grades' counsel M. Duncan Grant, dated May 28, 2009, attached as Exhibit A. While the statement of Health Grades' counsel at the June 4 hearing that no trial date has been set in the New York litigation, Tr. at 10, was technically correct, Health Grades failed to inform the Court of the important fact of the parties' agreement and the deadlines in that agreement.

119092.1

Health Grades' interference with the subpoena for the Hewitt documents, which has been pending since mid-February 2009.

At the outset, Health Grades has been deliberately unclear as to exactly which of the Hewitt documents are subject to its motion to quash. Therefore, at a minimum, the Court should require that Health Grades specify exactly which Hewitt documents it objects to, and should order the immediate release of all Hewitt documents not subject to a protective order issued by the Court. Second, Health Grades' claim that enforcement of the subpoena somehow will violate the sanctity of the arbitration process turns the situation before the Court exactly on its head. It is Health Grades' hiding behind the smokescreen of a private agreement, to which the plaintiffs in the SDNY litigation were never parties, that is doing violence to the sanctity of the federal judicial process. Third, in the unlikely event that the Court of Appeals finds that the Court erred in not preventing release of the Hewitt documents, no harm will come to Health Grades. Health Grades' own filings in this case show that its purported concern with confidentiality is a pretext, and its real reason for seeking to suppress the Hewitt documents is tactical litigation advantage. Any legitimate concern on the part of Health Grades with the confidentiality of trade secrets or other confidential business information is addressed by the protective order in the underlying SDNY case. If more is necessary, then the documents will be uniquely numbered and can be returned.

I. ARGUMENT

### A. The Court Should Require Immediate Production of All Hewitt Documents Not Subject to a Protective Order.

At the outset, the Court should require Health Grades to specify exactly which of the Hewitt documents it even objects to. Health Grades has been deliberately unclear as to whether it objects to the production of *all* the Hewitt documents, or only some of them. For example, Health Grades' original Motion to Quash dated March 23, 2009, does not specify that it wishes to quash the subpoena in part, or use any words indicating other than that it wishes to quash the entire subpoena. Yet, in its April 7, 2009 Reply Brief, at page 2 n. 2, Health Grades states, "At issue are deposition transcripts of nine witnesses . . . ." Similarly, at the hearing on June 4, 2009, Health Grades' counsel complained about "transcripts . . . being used in other discovery." Transcript of June 4, 2009 hearing, at 8.

Hewitt has approximately 17 boxes of documents waiting to be produced. Clearly, this encompasses many more documents than a few deposition transcripts. As the plaintiffs have noted previously, Health Grades has already produced some documents from the arbitration. Health Grades production, however, has been incomplete. As Health Grades has acknowledged, it has failed to produce over 2500 pages of documents relevant to the Hewitt arbitration because it did not receive those documents from its counsel handling the arbitration.[2] Therefore, the plaintiffs are entitled to the Hewitt documents so as to ensure a complete record on the crucial issue of the relationship and course of dealing between Hewitt and Health Grades.

In light of its previous production of documents from the arbitration, Health Grades cannot legitimately object to production of all of the Hewitt documents. At a bare minimum, the Court should issue an order requiring the immediate release of all Hewitt documents that are not legitimately covered by a protective order duly issued by the Court in this matter.

### B. Health Grades' Actions Have Violated the Sanctity of the Judicial Process.

Health Grades continues to characterize the disagreement over the Hewitt documents as a matter of high principle, involving potential violations of the sanctity of the arbitration process. Health Grades has it exactly backwards. Health Grades' unjustified obstruction of the plaintiffs' right to discovery materials that are unquestionably relevant to the SDNY litigation, and specifically to matters that Health Grades itself has put in issue, violates the sanctity of the federal judicial process.

#### 1. There Is No Order of the Arbitration Panel Even Arguably Preventing Release of the Hewitt Documents.

The Court found, as a matter of fact, that the Arbitration Stipulation was never signed or entered as an order of the Arbitration Panel. "[T]here is, in fact, no arbitration order, no order by the panel." Transcript of May 11, 2009 Hearing, at 11. Thus, as the Court found, there was no aspect of the arbitration process to be *encroached upon.*

> But nothing about this indicates to me that there was anyone in a position of authority to decide, particularly those arbitrators who have status accorded by the federal Arbitration Act and by other state laws governing arbitration, there

---

[2] *See* the letter from Andrea Toy Ohta, Esq. to Philip Heller, Esq., February 19, 2009, at 3-4 (attached as Exhibit B). As Health Grades notes in that letter, documents with Bates-stamp numbers in the form "HGxxxxx" were documents that Health Grades' counsel in the SDNY litigation obtained from its counsel handling the Hewitt arbitration. Documents HG14786-HG17364 have never been produced to the plaintiffs or accounted for.

was no occasion for the arbitrators to exercise whatever authority they have and say, "these are barred from future use from anybody else." They aren't asked to do it, they didn't do it, and then I can't quash the subpoena.

*Id.* at 12.

Thus, the most that Health Grades can say about the Arbitration Stipulation is that it is an agreement between Hewitt and Health Grades.[3] It sets forth rules about how Hewitt and Health Grades are to behave in connection with the arbitration. It does not, however, bind the plaintiffs. As the Court said, "[Y]ou need more than that to bind someone who is not a party to the original agreement, as in this case the plaintiffs were not." *Id.* at 14. Thus, there is no conflict between the subpoena in this action and a (non-existent) order of the arbitration panel.

The Court recognized early on that there was no policy justification for allowing an arbitration stipulation not issued as an order of the panel from countermanding operation of the federal court subpoena in this action.

> If there is no signed arbitration order, then basically the subpoena won't be quashed. I'm dealing with what is essentially a contractual arrangement which is not binding on the person issuing the subpoena because there is no signed arbitration order, *not enforceable as a matter of policy to aid arbitration*, which under the federal arbitration act is favored. *So there is no policy justification.*

Transcript of April 14, 2009 hearing at 5 (emphasis added). Thus, the Court correctly noted that whatever might be the policy issues surrounding a conflict between a protective order that was actually entered by an arbitration panel and a federal court subpoena do not exist in this case. There simply is no policy justification for allowing a private agreement to which the plaintiffs were not a party to trump the plaintiffs' legitimate discovery and their duly-issued subpoena.

The federal judicial process, as well as the plaintiffs, will be harmed by further delay in the receipt of the Hewitt documents. There is no dispute that the Hewitt documents are relevant; Health Grades claims that the arbitration award vindicates its position in the underlying case in the Southern District of New York. Receipt of the documents by the plaintiffs has been delayed for months while Health Grades obstructed Hewitt's compliance by weaving meritless arguments

---

[3] In fact, that is precisely how Health Grades originally described the stipulation: "A privately signed protective order amounts to a contract between the parties. As a contract, a privately signed stipulated protective order is enforceable in a breach of contract action . . . ." Health Grades' Motion to Quash, March 24, 2009, at 3, ¶ 7 (citations and internal quotation marks omitted).

against disclosure. The Hewitt subpoena was served on February 13, 2009 — five months ago. Hewitt does not object to production of the documents and has been ready to produce them since mid-March. Despite that, the plaintiffs have not seen a single document from the 17 boxes that Hewitt would have produced four months ago. Health Grades' interference with the plaintiffs' receipt of the Hewitt documents has delayed deposition discovery, for it would not be efficient to begin such depositions before reviewing the thousands of pages the Hewitt documents comprise. The parties have agreed to a fact discovery cutoff of December 2, 2009 (which in turn was pushed back from an earlier cutoff of July 31, 2009, as the result of the holdup of production of the Hewitt documents). It is unlikely that the Court of Appeals will decide the issue of the motion to quash before the December 2 deadline. Further delay in the receipt of the Hewitt documents threatens both the case schedule and the plaintiffs' ability to prepare their case.

### 2. The Arbitration Stipulation Expressly Provides That It Is Subordinate to a Subpoena.

In addition, even if in theory a stipulation like the Arbitration Stipulation could countermand a subpoena issued in this Court, the Arbitration Stipulation at issue here expressly provides that it is subordinate to a judicial subpoena. Paragraph 6 of the stipulation states:

> Nothing in this Stipulated Protective Order shall preclude disclosure of Confidential Materials, which a party in good faith believes must be disclosed in order to comply with Securities and Exchange Commission reporting obligations, Court Order or a properly served subpoena.

The term "nothing" is absolute and unqualified, and means what it says — *nothing*. The Arbitration Stipulation simply does not preclude production of documents by Hewitt pursuant to a subpoena like that issued by the plaintiffs.

Thus, because the Arbitration Stipulation expressly contemplates production of documents pursuant to subpoena, Hewitt's production of documents in response to the plaintiffs' subpoena does not contravene the stipulation.

### C. There Will Be No Significant Effect Upon Health Grades In the Unlikely Event that the Court of Appeals Finds That the Court Erred by Not Quashing the Subpoena.

At the June 4, 2009 hearing, the Court asked the parties to advise it as to what the consequences would be if the Court were wrong, that is, if the Court did not stay its order denying the motion to quash and the Court of Appeals later determined that the Court erred and the documents should not have been produced.

There will be no negative consequences if the Appeals Court later decides that the Court has been mistaken in denying the motion to quash. First, in light of the Court's finding that the arbitration stipulation was not an order of the panel and the clear precedent of *Jepson*,[4] it is highly unlikely that the Court of Appeals will find that the Court erred. Even if the Appeals Court does find that the Court erred, Health Grades is still adequately protected by the protective order issued in the SDNY litigation ("SDNY Protective Order"). As the plaintiffs have pointed out, the only basis on which Health Grades has claimed that the Hewitt documents should not be produced are that they are in some vague and unspecified way "confidential." Health Grades has never articulated a substantive justification for why the documents are confidential (other than it says so). Despite multiple opportunities to do so in this proceeding, it has not claimed that the documents contain trade secrets or other confidential business information. Even if they did, that kind of information falls squarely under the protection of the SDNY Protective Order — which counsel for Health Grades drafted. Therefore, there will be no public disclosure of any confidential information contained in the Hewitt documents. If Health Grades' concern over the confidentiality of the documents is its genuine reason for seeking to prevent disclosure of those documents, it is more than adequately protected by the SDNY protective order.

Of course, as the plaintiffs have previously pointed out, business confidentiality or trade secrets are not the true basis for Health Grades' objection to the production of the Hewitt documents. Health Grades simply does not want damaging evidence to be produced. That is not a proper justification for invoking the provisions of the Arbitration Stipulation designed to protect legitimate concerns with business confidentiality, particularly in light of the inapplicability of the Arbitration Stipulation in the face of a judicial subpoena.

Further, Health Grades' argument again raises the issue of exactly which documents it is even objecting to. As noted previously, Health Grades has already produced arbitration-related documents in response to document production requests in the underlying New York litigation. The Arbitration Stipulation did not stop Health Grades from producing those documents under a

---

[4] *See* the discussion in the plaintiffs' June 3, 2009, opposition to Health Grades' motion to stay, at 4-5. In *Jepson, Inc. v. Makita Electric Works, Ltd.*, 143 F.R.D. 657 (N.D. Ill. 1992), *rev'd on other grounds*, 30 F. 3d 854 (7th Cir. 1994), a case cited by Health Grades in its original motion to quash, the Court found that a protective order (in a court case, not merely an arbitration) signed by the parties but not entered by this Court was not enforceable as a Court order, but was at most a contract between the parties, which might give rise to a breach-of-contract action.

claim of confidentiality pursuant to the SDNY Protective Order. Health Grades cannot legitimately argue that the protections of the Arbitration Stipulation are selective or that it has the right to cherry-pick the Hewitt documents that will or will not be produced.

The Hewitt documents are evidence of an issue that Health Grades itself has raised in the SDNY litigation. For that reason, the plaintiffs should be allowed to obtain discovery of the Hewitt documents. Also, as noted previously, Health Grades has not produced to the plaintiffs at least 2500 documents that it provided to Hewitt in the arbitration. Clearly, the documents that Health Grades produced in discovery in the SDNY litigation and the documents in the Hewitt files are not necessarily the same. The Hewitt documents, therefore, are an important cross-check on Health Grades' production in the SDNY litigation.

It is not cause to stay operation of a subpoena pending appeal if reasonable protective measures can be taken. *See, e.g., SEC v. Finazzo,* 2008 U.S. Dist. LEXIS 29838, at *11-12 (S.D.N.Y. 2008); s*ee also EEOC v. Optical Cable,* 1998 U.S. Dist. LEXIS 10787 at *7-8 (W.D. Va. 1998). One such measure is already in place — the SDNY Protective Order, which more than adequately protects the legitimate confidentiality interests of Health Grades. If, when all is said and done, the Court of Appeals were to find that the Court should have quashed the subpoena in part, any Hewitt documents may be identified and returned. The plaintiffs will have its litigation support contractor Bates-stamp the documents with identifying numbers that will enable them to be identified as part of the current Hewitt production.[5] *See Church of Scientology v. United States,* 506 U.S. 9, 15 (1992) (production of documents pursuant to subpoena does not render appeal moot; if subpoena was determined to be improperly issued, court could order documents returned or destroyed); *EEOC v. Optical Cable,* 1998 U.S. Dist. LEXIS 10787 at *7-8. As noted before, however, Health Grades' arguments have no merit, and reversal is an unlikely possibility.

Accordingly, there will be no significant consequence if the documents are produced and the Court of Appeals later finds that the subpoenas should have been quashed. The Court therefore should not stay the effect of its denial of Health Grades' motion to quash the Hewitt subpoena pending appeal.

---

[5] If indeed only a handful of deposition transcripts or a similarly small subset of the 17 boxes in Hewitt's possession is at issue in this motion, the ability to identify and, if necessary, return the documents is enhanced.

## II. Conclusion.

For the reasons set forth above and in the plaintiffs' June 3, 2009 opposition, the plaintiffs respectfully request that the Court deny Health Grades' motion for a stay of the Court's May 11, 2009 order pending appeal.

Dated: July 14, 2009

Respectfully submitted,

By: _____/s/ Steven R. Smith_____
One of the Attorneys for Plaintiffs Gotham Holdings, LP, Primarius Partners LP, Primarius Offshore Partners LTD., Primarius Focus LP, Primarius China Fund LP, Willow Creek Capital Partners, LP, Willow Creek Capital Partners II, LP and Willow Creek Offshore, Ltd.

Steven R. Smith
BRYAN CAVE LLP
161 N. Clark Street
Suite 4300
Chicago, Illinois 60601
(312) 602-5000 (telephone)
(312) 602-5050 (facsimile)
E-mail:srsmith@bryancave.com

## CERTIFICATE OF SERVICE

I, Steven R. Smith, an attorney, certify that I caused a copy of the foregoing *Plaintiffs' Supplemental Memorandum in Opposition to Defendant Health Grades' Motion for Stay Pending Appeal* to be served upon the following individuals via U.S. Mail and electronic mail on this the 14th day of July, 2009:

>Matthew C. Luzadder
>Kelley Drye & Warren LLP
>333 West Wacker drive, Suite 2600
>Chicago, IL 60606
>mluzadder@kelleydrye.com
>
>Ilene S. Grant, Esq.
>Hewitt Associates, LLC
>100 Half Day Road
>Lincolnshire, IL 60069
>Ilene.Grant@hewitt.com
>
>M. Duncan Grant, Esq.
>Pepper Hamilton LLP
>3000 Two Logan Square
>Eighteenth and Arch Streets
>Philadelphia, PA 19103
>grantm@pepperlaw.com
>
>Gregory B. Kanan, Esq.
>Rothgerber Johnson & Lyons LLP
>One Tabor Center
>Suite 3000
>1200 17th St
>Denver, CO 80202-5855
>gkanan@rothgerber.com

                                               /s/    Steven R. Smith
                                               Steven R. Smith