IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Gotham Holdings, LP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 09-C-1843 |
| | ) | |
| v. | ) | Hon. James B. Zagel |
| | ) | |
| Health Grades, Inc., | ) | Related to Case No. 07 CV 2563, |
| | ) | pending in the Southern District of |
| | ) | New York. |
| Defendant. | ) | |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO STAY**

Defendant Health Grades, Inc. ("Health Grades"), by its counsel, Kelley Drye & Warren, LLP, and pursuant to the Court's June 4, 2009, Order, submits this Supplemental Briefing in Support of its Motion to Stay, filed on May 27, 2009.

**INTRODUCTION**

On May 11, 2009, the Court ordered Hewitt Associates, LLC ("Hewitt") to disclose confidential documents from its arbitration with Health Grades to Plaintiffs Gotham Holdings, LP, et al. ("Plaintiffs") (the "May 11, 2009, Order"). On May 27, 2009, Health Grades moved the Court to stay its May 11, 2009, Order, pending appeal.

At the June 4, 2009, hearing on Health Grades' Motion to Stay, the Court recognized that disclosure of the confidential arbitration documents could potentially cause irreparable harm to Health Grades. The Court further acknowledged the potential implications of its decision on the strong federal policy favoring arbitration. Accordingly, the Court directed the parties to supplement their briefing on these two issues.

As discussed below in greater detail, these two particular issues confirm that this Court should stay its May 11, 2009, Order. Health Grades will be irreparably harmed in at least two ways if this Court does not enter a stay. First, once the confidential arbitration documents are

disclosed to the Plaintiffs, their confidentiality will be lost forever. Second, the impact of these documents on the Southern District of New York litigation will be impossible to reverse if the Seventh Circuit overturns the Court's Order. Furthermore, the premature disclosure of these documents will undermine the key benefits of arbitration and, thus, violate the strong federal policy favoring arbitration. Accordingly, the Court should grant Health Grades' Motion to Stay.[1]

## ARGUMENT

### I. THE HARM OF DISCLOSING THE CONFIDENTIAL ARBITRATION DOCUMENTS TO PLAINTIFFS CANNOT BE UNDONE.

The disclosure of the confidential arbitration documents will cause Health Grades irreparable harm. Thus, this Court should stay its May 11, 2009, Order. See E.E.O.C. v. Quad/Graphics, Inc., 875 F. Supp. 558, 560 (E.D.Wis. 1995) (stating that stay of order pending appeal appropriate where appellant demonstrates irreparable harm).

#### A. Disclosure of the confidential documents will permanently affect their confidential status.

Health Grades and Hewitt, as a corporate entity, agreed to maintain the confidentiality of the arbitration. By reviewing these documents, the Plaintiffs will eliminate their confidential status. This is irreparable harm. See ITT Educ. Servs., Inc. v. Arce, 533 F.3d 342, 347 (5th Cir. 2008) (affirming preliminary injunction enjoining party from disclosing confidential arbitration documents, finding that plaintiff "will suffer irreparable harm because there is no cure for the breach of a confidentiality agreement" (internal quotations omitted)).

The Plaintiffs' contention that Health Grades' confidentiality concerns are pretextual is demonstrably false. [Plaintiffs' Memorandum in Opposition to Defendant Health Grades' Motion for Stay Pending Appeal ("Pls.' Resp.") at 7.] Health Grades went to great lengths to ensure the confidentiality of the arbitration. The parties entered into a sweeping arbitration clause that

---

[1] Health Grades' opening brief in its appeal of the Court's May 11, 2009, Order, was filed with the Seventh Circuit Court of Appeal simultaneously with this brief.

{00692037 / 3}
CH01/LUZAM/243065.1 }

2

3

required the parties and the arbitrators to treat "all aspects" of any resulting arbitration as confidential. Furthermore, the Development and Service Agreement mandated that any resulting arbitration proceeding would be governed by the AAA Rules and the FAA. [Docket No. 13, p.39.] The AAA Rules explicitly recognize that its proceedings are to be "private." See Introduction to AAA Rules, as posted www.adr.org; see also Group Health Plan, Inc. v. BJC Health Sys., Inc., 30 S.W.3d 198, 205 n.3 (Mo. App. 2000) (finding that incorporation of AAA Rules into arbitration agreement demonstrated that "parties took measures to ensure that the documentation related to the proceedings would remain confidential"). Additionally, the parties submitted a Stipulated Protective Order to the arbitration panel that required confidential materials to be: (1) "used for no other purpose, including, but not limited to, other litigation"; and (2) destroyed within 45 days after entry of final judgment.

    Health Grades, Health Grades' counsel, and Hewitt the company, complied with their obligations to destroy its documents in a timely manner. Hewitt's counsel, for whatever reason, failed to do so. Health Grades has the right to protect the bargained-for confidentiality of the Hewitt arbitration. Simply because Hewitt's counsel breached its obligations does not mean that Health Grades should stand by and permit Plaintiffs to rummage through the volumes of documents of an otherwise confidential and final proceeding.

    The Plaintiffs' assertion that the protective order entered by Judge Cedarbaum will safeguard the confidentiality of the arbitration documents also has no merit. [Pls.' Resp. at 7.] The protective order will not protect against the irreparable harm of the Plaintiffs seeing the confidential documents. The protective order is also limited to only trade secrets or other confidential business information. [See id.] Health Grades' confidentiality concerns go beyond just business materials as it sought to keep the entire arbitration confidential. Thus, the

protective order may not save many of the arbitration documents from disclosure to the general public. This harm would be irreversible.

**B.** **Once disclosed, the information contained in the confidential arbitration documents will be impossible to extract from the litigation in the Southern District of New York.**

If the information contained in the 17 boxes of confidential arbitration documents is introduced to the Southern District of New York litigation, there will be no way to undo its influence. In other words, once rung, this bell cannot be un-rung.

It would be impossible to implement a plan by which the parties – or Judge Cedarbaum – could accurately police the progression of this information. The litigation before Judge Cedarbaum is in its nascent stages. If the arbitration documents, which include approximately 45 hours of deposition transcripts, are disclosed, the confidential information will seep into every aspect of written and deposition discovery and become embedded in the litigation. Ultimately, the information contained in these documents would likely become the subject of motions practice and even Orders entered by Judge Cedarbaum.

It would further be impossible to stop and then reverse the spread of this information if the Seventh Circuit overturns the Court's Order. This is particularly true once Plaintiffs, their counsel, or Judge Cedarbaum view these documents. The information learned cannot be "un-learned." Accordingly, application of the "fruit of the poisonous tree" doctrine, which excludes evidence before a jury in a criminal action, cannot undo the documents' influence. See Jenkins v. City of New York, 478 F.3d 76, 91 n. 16 (2d Cir. 2007).

Furthermore, even if one could reverse the irreversible effects of the disclosure of these documents, the Plaintiffs have not moved Judge Cedarbaum regarding any formalized plan to oversee the disclosure of the confidential arbitration documents. Thus, any contention that Judge

Cedarbaum can or will implement any specific strategy to contain the spread of this information is speculative at best.

The potential harm caused by the documents' disclosure goes beyond the spread of information. In the event the Seventh Circuit reverses, the costs associated with attempting to retract the documents from the litigation will be significant. The parties will inevitably dispute what information was learned as a result of the disclosed documents, which will lead to additional motion practice, hearings, etc. In addition, the parties will likely have to re-take depositions, strike or withdraw pleadings, and the court would need to potentially vacate orders that used or relied upon this information. The possibility of these excessive costs, in addition to the substantial consumption of Judge Cedarbaum's resources, cannot be justified. Thus, a stay of the Court's May 11, 2009, Order is necessary.

## II. DISCLOSURE OF THE CONFIDENTIAL DOCUMENTS WILL UNDERMINE THE FEDERAL POLICY FAVORING ARBITRATION.

A stay of the Court's May 11, 2009, Order is additionally appropriate since Health Grades will raise "serious questions on appeal." See Thomas v. City of Evanston, 636 F. Supp. 587, 591 (N.D.Ill. 1986). As Health Grades has demonstrated throughout this proceeding, there is substantial support in the law to preclude the disclosure of confidential arbitration documents to a third party. A stay is also appropriate since this issue is a matter of first impression in the Seventh Circuit. See In re Workers' Compensation Refund, 851 F.Supp. 1399, 1401 (D.Minn. 1994) ("A district court . . . may properly stay its order pending appeal where such order involves the determination of substantial and novel legal questions." (internal quotations omitted)).

An additional over-arching issue with the Court's May 11, 2009, Order, however, is its implications with respect to the Federal Arbitration Act. As demonstrated below, this Court

should protect the confidentiality of the Hewitt arbitration unless the Seventh Circuit determines otherwise.

### A. The FAA creates a strong presumption favoring arbitration.

By enacting the Federal Arbitration Act ("FAA"), Congress declared a strong federal policy favoring arbitration. See <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 128 S. Ct. 1396, 1402 (2008); <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22 (1983). To implement Congress' mandate, federal courts have jealously guarded the marquee attributes and benefits of arbitration: confidential, efficiency, expediency, and cost-effectiveness. Disclosure of the arbitration documents pending Health Grades' appeal will undermine each of these key benefits.

### B. Disclosure of the confidential arbitration documents pending Health Grades' appeal would be contrary to the FAA's aim of confidentiality.

The law protects the privacy and confidentiality of arbitration. The FAA offers litigants a way in which to opt out of the public system of law and move disputes into a private setting. The private nature of arbitration is enhanced by the greatly restricted review of arbitration awards. See <u>Hall St. Assocs.</u>, 128 S. Ct. at 1408 (holding that arbitration award could be vacated only upon the narrow exceptions listed in 9 U.S.C. § 10). In fact, other than the grounds enumerated in the FAA, the federal courts lack authority to interfere with an arbitration proceeding. See, e.g., <u>Champ v. Siegel Trading Co., Inc.</u>, 55 F.3d 269, 276 (7th Cir. 1995) (describing limited instances where the Federal Rules of Procedure may be employed by a district court under the FAA); <u>Twist v. Arbusto</u>, 2007 WL 30556, at *3 (S.D.Ind., Jan. 3, 2007) (unpublished) (noting that FAA provides exclusive authority over arbitration contracts and that "Federal Rules of Civil Procedure do not provide district courts an alternate grant or authority over arbitration proceedings").

Furthermore, the courts treat "confidentiality [as] a paradigmatic aspect of arbitration . . . ." Guyden v. Aetna, Inc., 544 F.3d 376, 85 (2d Cir. 2008). Indeed, an "attack on the confidentiality provision [of an arbitration clause], is, in part, an attack on the character of arbitration itself." Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 175 (5th Cir. 2004).

As a result, courts routinely protect the confidentiality of arbitrations from third-party attack. See, e.g., Group Health Plan, Inc., 30 S.W.3d at 202-05 (finding that where parties entered into a stipulated protective order, attempt by third-party to discover information from that arbitration would undermine the state policy favoring arbitration); Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgt., Inc., 2005 WL 1522783, at *3-*4 (E.D.N.Y., June 28, 2005) (unpublished) (denying plaintiff's motion to compel production of confidential arbitration award between defendant and third-party on grounds that it "promotes federal policy and encourages ADR"); ITT Educ. Servs., Inc., 533 F.3d at 347-48 (affirming preliminary injunction enjoining attorney who intended to introduce evidence from prior arbitration in subsequent proceeding between new parties in violation of arbitration confidentiality clause); see also A.T. v. State Farm Mut. Auto. Ins. Co., 989 P.2d 219, 220 (Colo. App. 1999) (implicitly holding that arbitrating parties could protect arbitration documents from disclosure to third-parties by agreeing to their confidentiality or by employing arbitration rules that provide for confidentiality).

Parties choose arbitration because of its confidential nature. Parties will be reluctant to enter into arbitration if they know their competitive or sensitive information can ultimately be disclosed to the public. Furthermore, when the parties explicitly agree that the contents of an arbitration should remain confidential, maintaining that confidentiality upholds the parties' expectations. Disclosure of the confidential arbitration documents will undermine these

reasonable expectations. This is particularly true in situations where, as here, the threat of disclosure derives from a party's failure to comply with its obligation to destroy confidential documents. Such a result – especially in light of the lack of controlling Seventh Circuit precedent – would be contrary to Congress' presumption in favor arbitration. See Fireman's Fund Ins. Co., 2005 WL 1522783, at *3 ("[P]rotecting confidentiality agreements . . . promotes federal policy and encourages ADR by ensuring that parties in an arbitration proceeding get the protections for which they contracted."); Global Reinsurance Corp. v. Argonaut Ins. Co., 2008 WL 1805459, at *1 (S.D.N.Y., April 18, 2008) (unpublished) (stating that the strong federal policy favoring the voluntary arbitration of disputes is promoted "by permitting one of the principle advantages of arbitration – confidentiality – to be achieved").

Moreover, Health Grades and Hewitt, the company, properly agreed upon and adhered to the Stipulated Protective Order's requirements and destroyed the confidential arbitration documents as required. Thus, during and after the proceeding, the parties treated the Stipulated Protective Order as just that – an order. To subsequently undercut the parties' compliance and eviscerate their binding choice of procedure for the simple reason that Health Grades was unable to locate a copy of the Stipulated Protective Order executed by the Panel, amounts to an impermissible review of the arbitration process. See Checkrite of San Jose, Inc. v. Checkrite, Ltd., 640 F. Supp. 234, 236 (D.Colo. 1986) (holding that great deference is to be given to arbitration proceedings since they "are not constrained by formal rules of procedure").

In fact, if the Court requires Hewitt to disclose the arbitration documents, it would essentially either re-write the parties' agreement or cause Hewitt to breach the agreement. This is contrary to Congress' unambiguous declaration that arbitration agreements are accorded great deference under the FAA and should be enforced as written. See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 444 F. Supp. 2d 909, 916-18 (N.D.Ill. 2006) (stating that

courts cannot re-write arbitration clauses and must enforce them as written); Cornell v. Harmony Homes, Inc., 2007 WL 38132, at *3 (D.Colo., Jan. 4, 2007) (unpublished) ("Courts must not rewrite arbitration agreements or limit their effect by strained construction and must enforce any agreements as written, unless there is an ambiguity in the language.").

In addition, production of these documents will allow Plaintiffs to improperly intrude upon Health Grades and Hewitt's arbitration. It is beyond dispute that Plaintiffs had no right to be present at any of the arbitration depositions, the hearing, etc., without the consent of Health Grades and Hewitt. Indeed, there is no procedural mechanism by which the Plaintiffs could have entered the proceeding. See Champ, 55 F.3d at 275 (holding that FAA "forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter); Twist, 2007 WL 30556, at *3 ("The [FAA] provides no authority by which a court could order or permit other parties to intervene in an arbitration."). Thus, permitting the Plaintiffs to sift through the record of the arbitration would, in effect, allow the Plaintiffs to improperly observe the proceedings in person.

Finally, the harm to Health Grades' confidentiality expectations must be viewed in light of Plaintiffs' failure to establish that they will incur "substantial harm" in the event a stay is entered. Quad/Graphics, Inc., 875 F. Supp. at 559. The Plaintiffs' only alleged harm is "delay." Pls.' Resp. at 10-11. This does not constitute "substantial harm." Quad/Graphics, Inc., 875 F. Supp. at 559. In reality, the Plaintiffs do not need the confidential arbitration documents in order to proceed with their litigation before Judge Cedarbaum. The Plaintiffs seek to take advantage of Hewitt's counsel's breach and rummage through the files of an otherwise completed and confidential proceeding. In consideration of the strong federal policy favoring arbitration, this is improper.

    **C.    Disclosure of the confidential arbitration documents would be contrary to the efficient, expeditious, and cost-effective nature of arbitration.**

In addition to undercutting Health Grades' reasonable expectation that the documents from the Hewitt arbitration would remain confidential (i.e., destroyed), disclosure of the documents will counter the efficient, speedy, and cost-effective nature of arbitration. See Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Local 627, 358 F.3d 459, 462 (7th Cir. 2004) (noting the need for arbitration to be efficient and cost-effective resolution of disputes); Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 289 (3d Cir. 2004) (stating that limited review of arbitrator's awards is necessary to uphold the federal policy in favor of arbitration and to avoid long and expensive litigation proceedings).

    The arbitration concluded more than two years ago. Allowing Plaintiffs to obtain and review confidential arbitration documents that should have been destroyed, will basically re-open the completed arbitration. This would prolong the proceeding and undermine its finality. See Arizona Elec. Power Co-op., Inc. v. Berkeley, 59 F.3d 988, 992 (9th Cir. 1995) ("The finality of arbitral awards must be preserved if arbitration is to remain a desirable alternative to courtroom litigation.").

    Furthermore, Health Grades will need to review the volumes of confidential information in Hewitt's possession before they can be disclosed to Plaintiffs. Upon completing this review, Health Grades will likely need to move the Court once again to stay disclosure based upon other defenses to their disclosure. The additional time and costs Health Grades will incur, which may be wholly unnecessary in the end if the Seventh Circuit reverses, conflict with the Congress' cost-effective aim of arbitration. Thus, this Court should stay its May 11, 2009, Order pending resolution of Health Grades' appeal.

## **CONCLUSION**

If a stay is not entered, Health Grades will suffer irreparable injury through the disclosure of confidential material. Indeed, there is no realistic manner in which to reverse the influence of the confidential arbitration documents once they are introduced to the litigation in the Southern District of New York. Furthermore, considering the strong federal policy favoring arbitration, this Court should stay its May 11, 2009, Order pending Health Grades' appeal. In the event the Court does not enter a stay for the pendency of the appeal of its May 11, 2009, Order, Health Grades alternatively requests that the Court stay enforcement of its Order until the Seventh Circuit rules upon Health Grades' Fed. R. App. P. 8 motion to stay.

WHEREFORE, Defendant Health Grades, Inc., respectfully requests that the Court enter an Order staying its May 11, 2009, Order, pending resolution of Health Grades' appeal of that Order, or, in the alternative, until the Seventh Circuit rules upon Health Grades' motion to stay, and such other relief as the Court deems just and proper.

Dated: July 14th, 2009.

> s/ Matthew C. Luzadder
> Matthew C. Luzadder, Esq.
> Kelley Drye & Warren, LLP
> 333 West Wacker Drive, Suite 2600
> Chicago, Illinois 60606
> T: (312) 857-2623
> F: (312) 857-7095
> *Attorneys for Defendant Health Grades, Inc.*

**CERTIFICATE OF SERVICE**

Matthew C. Luzadder, an attorney at Kelley Drye & Warren LLP, certifies that on this 14th day of July, 2009, he caused a copy of Appellant/Defendant Health Grades, Inc.'s *Supplemental Briefing In Support of Motion to Stay* to be filed using the ECF system, and served on all parties via the ECF system, pursuant to LR 5.9, as to Filing Users and in accord with LR 5.5 as to any party who is not a Filing User or represented by a Filing User., before the hour of 7:00 p.m.

Dated: July 14, 2009

/s/ Matthew C. Luzadder
Stephen A. Wood
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
T: (312) 857-7070
F: (312) 857-7095